# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| JEFFREY JONES, | § | |
|     Plaintiff | § | |
| | § | |
| V. | § | |
| | § | CASE NO. 4:14CV354 |
| ALEX SHIVERS, NICK EMMONS, | § | Judge Mazzant/Judge Bush |
| and CITY OF SHERMAN, | § | |
|     Defendants. | § | |

## MEMORANDUM ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Came on for consideration the report of the United States Magistrate Judge in this action, this matter having been heretofore referred to the United States Magistrate Judge pursuant to 28 U.S.C. § 636. On July 15, 2016, the report of the Magistrate Judge (Dkt. #128) was entered containing proposed findings of fact and recommendations that the motions for summary judgment filed by the City of Sherman (the "City") (Dkt. #70) and by Alex Shivers and Nick Emmons (the "Individual Defendants") (Dkt. #73) should be granted. On August 5, 2016, Plaintiff filed objections to the Magistrate Judge's report (Dkt. #131), and the Individuals Defendants have filed a response (Dkt. #132).

Having received the report of the Magistrate Judge (Dkt. #128), having considered Plaintiff's timely filed objections (Dkt. #131), and having conducted a *de novo* review, the Court is of the opinion that the findings and conclusions of the Magistrate Judge are correct and the objections are without merit as to the ultimate findings of the Magistrate Judge. The court hereby adopts the Magistrate Judge's report (Dkt. #128) as the findings and conclusions of the Court.

**BACKGROUND**

Plaintiff Jeffrey Jones filed his Original Complaint and Jury Demand on May 31, 2014. *See* Dkt. #1. Jones' lawsuit alleges that his constitutional rights were violated when Defendant Shivers, a police officer with the City, shot Jones during an arrest incident. Jones, in addition to being employed as a firefighter for the City since May 1, 2000 (*see* Dkt. #70-10 at 3-4), is also a private investigator, bail bondsman, and bounty hunter when he is off duty. *Id.* Jones is also a licensed peace officer. *See* Dkt. #70-2 at 12.

On March 27, 2013, Jones, acting in his capacity as a bounty hunter, contacted the Sherman Police Department ("SPD") to request help in executing an arrest warrant on Gregory Elkins. *See* Dkt. #70-10 at 74-75. Jones ultimately spoke with Emmons who agreed to serve the warrant but advised Jones that: "I would feel better if you just let our guys go over and handle it," to which Jones replied: "That's fine. That's not a problem." *Id.*; *see also* Dkt. #70-10 at 23-24. After Emmons verified the warrant, Emmons, Shivers, and Kaleb Edwards, a recruit who was in field training under Emmons, proceeded to the address where the warrant was to be served. *See* Dkt. #70-11 at 17-18, 25. Emmons and Edwards approached the front of the house to serve the warrant, and Emmons directed Shivers to go around to the back of the house in case Elkins tried to flee. *Id.* Jones, who was in plain clothes, also went to the back of the house. *See* Dkt. # 70-8 at 3 and 29; Dkt. #79 at 28. Elkins did indeed try to flee, and upon hearing the resulting "commotion" inside the house, both Jones and Shivers believed that Elkins was attempting to flee from the back of the house. However, neither Jones nor Shivers was aware of the presence of the other. Jones stumbled and fell as he attempted to cross a fence, and at some point

unholstered his Taser, either as he was on the ground or as he was attempting to stand. *See* Dkt. #79 at 15-16. Shivers saw Jones as he crossed the fence and observed the weapon. *See* Dkt. #70-11 at 39-40. Not knowing who Jones was and believing he was in danger from the unknown man with a weapon (which he did not know was a Taser), Shivers fired two shots at Jones hitting him in the right armpit and lower left abdomen. *Id*. at 78. When Jones fell to the ground after he had been shot, he identified himself to Shivers as a "bounty hunter." *Id*. 70-9 at 4.

Jones subsequently filed this lawsuit seeking money damages pursuant to 42 U.S.C. § 1983 against the City and against the Individual Defendants in their official and individual capacities alleging violations of his rights under the Fourth and Fourteenth Amendments. Although Jones' complaint avers that his excessive force claim is "[p]ursuant" to the Fourth Amendment and Fourteenth Amendment," the complaint fails to plead a separate claim under the Fourteenth Amendment.[1] *See* Dkt. #1 at ¶¶ 26 and 35. The Fourth Amendment applies this excessive force claim. *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Jones complains that Shivers' shooting of him amounts to a violation of his constitutional rights, that Emmons supervision of Shivers and command of the scene amounted to a constitutional violation,

---

[1] Jones also cites 42 U.S.C. § 1985 ("Section 1985") as a basis for liability vis-à-vis his Fourth Amendment rights. This citation occurs in the heading directly underneath the title "First Cause of Action," but there is no mention of Section 1985 anywhere else in the pleading. *See* Dkt. # 1 at 7. Section 1985 allows a person to assert a claim for conspiracy to interfere with his civil rights. 42 U.S.C. § 1985. Subsections 1 and 2 do not apply in this instance, and to prevail under subsection 3, Jones must also show that the conspiracy was motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.*" United Bhd. of Carpenters & Joiners of America, Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 829, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983) (internal quotations and citation omitted); *see also Lockett v. New Orleans City*, 607 F.3d 992, 1002 (5th Cir.), cert. denied, 131 S.Ct. 507 (2010). Jones makes no allegation that there was a conspiracy against him that was motivated by some "invidiously discriminatory animus," nor does the evidence suggest such. Plaintiff, thus, fails to state a claim under Section 1985.

and that Shivers and Jones' actions related to failure to render medical care amounted to a Constitutional violation. Jones also brings a Texas common-law claim of assault and battery against Shivers in his individual capacity. The Court notes that Jones has offered no objection to the Magistrate Judge's recommendation that his claim for deprivation of reasonable medical care be dismissed. Nor does he offer any objections to the Magistrate Judge's recommendation that his claims against the City also be dismissed.

## ANALYSIS

Primarily, Jones objects that in considering the issue of whether Shivers' use of force was objectively reasonable under the circumstances, the Magistrate Judge improperly resolved "disputed facts and circumstances" in favor of Defendant Shivers. *See* Dkt. #131 at 6. As explained by the Magistrate Judge, the substantive law which identifies which facts are material here is the doctrine of qualified immunity, which provides that government officials performing discretionary functions generally are shielded from liability for civil damages to the extent that their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *See Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 380 (5th Cir.2005); *see also Hudspeth v. City of Shreveport*, 2006 WL 3747446, at *5 (W.D. La. 2006), aff'd, 270 F. App'x 332 (5th Cir. 2008). The Magistrate Judge assumed, for purposes of considering the instant summary judgment motions, that Plaintiff is able to establish a constitutional violation and focused his analysis on the second factor – whether the government official's conduct was objectively unreasonable in light of clearly established law.

"Excessive force claims…are evaluated for objective reasonableness based upon the information the officers had when the conduct occurred." *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d. (2001). The qualified immunity shield is broad and protects actions, even mistakes, that are reasonable under the existing law. *See Fraire v. City of Arlington*, 957 F.2d 1268 (5th Cir.1992). Despite Jones' objections, he largely admits that the events unfolded as recited in the Magistrate Judge's report. To the extent that there are variations in the versions offered by Jones and Shivers, the Court does not find them to be material. For example, Jones takes issue with the Magistrate Judge's conclusion that Jones "was attempting to jump a fence" (*see* Dkt. #128 at 16). Jones argues that "he was stepping over the fence, not jumping" (*see* Dkt. #131 at 6). Although Jones testified that the height of the fence was such that he could easily step over it (*see* Dkt. #77 at 29), he also testified that when he heard the "commotion" inside the house, he perceived there to be a "situation" and that he needed to act quickly (*see* Dkt. #70-10 at 29). He also testified that he perceived a need to jump over the fence in response to the "situation" that was unfolding inside the house. *See* Dkt. #73-4 at 15. Thus, at the very least the evidence suggests that Jones was moving quickly as he "stepped" over the fence. In any event, whether Jones was stepping, stepping quickly, or jumping over the fence was not material to the Magistrate Judge's analysis. And, as explained further below, the Magistrate Judge considered multiple factors in his analysis – not merely Jones' manner of crossing the fence.

Jones also argues that there is a fact issue as to whether he pointed his Taser toward Shivers. *See* Dkt. #131 at 7. Although Jones' memory was unclear on some of the

5

specifics, he testified that the Taser was out of its holster "at some point in time," that when he stumbled and hit the ground, he thinks the Taser was "lying on the ground," and that although he was "not a hundred percent sure, [he] thinks he picked it up" as he was trying to stand. *See* Dkt. #79 at 15. As the Magistrate Judge outlined in his report, Jones' testimony and Shivers' testimony are largely consistent, and Jones provides no evidence contradicting Shivers' testimony that the Taser was pointed at him. *See* Dkt. #78 at 14. Jones also argues that the Magistrate Judge should have inferred that since Jones observed "what turned out to be Shivers' legs behind the doghouse …, he would be hesitant to then grab his Taser and point it at the person on the ground he reasonably could see wearing a uniform." *See* Dkt. #131 at 7. There is simply no basis for such an inference, and the Court finds that argument meritless. The Magistrate Judge's analysis is detailed and supported by evidence, and the Court thus finds that the Magistrate Judge appropriately applied the objective reasonableness standard.

Jones' final objection is that Shivers should have given a warning before firing shots. *See* Dkt. #131 at 7. Jones relies on *Tennessee v. Garner* for the proposition that deadly force may be used "if, where feasible, some warning has been given." 471 U.S. 1, 13, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). *Garner*, however, is tempered by the requirement that reasonableness must allow for the fact that "police officers are often forced to make split-second judgment in circumstances that are tense, uncertain, and rapidly evolving." *Graham*, 490 U.S. at 395. As the Magistrate Judge noted, whether or not it was feasible for Shivers to issue a warning before shooting cannot be judged through "the 20-20 vision of hindsight." *Mace v. City of Palestine*, 333 F.3d 621, 625 (5th Cir.

6

2003) (internal citations omitted). Although Jones attempts to argue that Shivers had already made a decision to shoot as soon as he saw the weapon (rather than when it was aimed in his direction and thus presenting an imminent danger), his arguments are speculative and not supported by the evidence. The factual record demonstrates that Shivers made a split-second judgment in tense, uncertain, and rapidly evolving circumstances, and the Court finds no error in the Magistrate Judge's conclusion that under such circumstances, an inquiry into alternative courses of action that Shivers could have taken is neither warranted nor appropriate.

Finally, Jones objects to the Magistrate Judge's recommendation that his state-law assault and battery claim be dismissed. Under Texas law, the "good faith" test for such claims is substantially the same standard used for qualified immunity determinations. *See Meadours v. Ermel*, 483 F.3d 417, 424 (5th Cir. 2007). As explained above, Jones' objections to the Magistrate Judge's excessive-force analysis are without merit as to the ultimate findings of the Magistrate Judge. Furthermore, Texas law requires that when a plaintiff files suit against both a governmental unit and any of its employees, the employee shall be immediately dismissed pursuant to the Texas Tort Claims Act on the filing of a motion by the governmental unit. *See* Tex. Prac. & Rem. Code §101.106 (e). The City has so moved, and as noted in Defendant Shivers' response to Jones' objections (*see* Dkt. 60 at 32-33), upon said filing, this Court no longer has jurisdiction over Jones' state-law claims. *Id.* As such, Plaintiff's claim against Defendant Shivers for assault and battery is dismissed.

## CONCLUSION

Having reviewed the record herein and finding that Plaintiff's objections are without merit, the Court hereby adopts the findings and conclusions of the Magistrate Judge as the findings and conclusions of this Court.

Therefore, the City's Motion for Summary Judgment (Dkt. 70) is **GRANTED**, and the Individual Defendants' Motion for Summary Judgment (Dkt. 73) is **GRANTED**.

This case shall be dismissed with prejudice with all costs to be borne by the party incurring same.

**It is SO ORDERED.**
**SIGNED this 30th day of August, 2016.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE